SUPERIOR COURT
OF THE
STATE OF DELAWARE

WILLIAM C. CARPENTER, JR.
JUDGE

NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DE 19801-3733
TELEPHONE (302) 255-0670

February 1, 2016

Daniel Logan, Esquire
Department of Justice
820 N. French Street
Wilmington, DE 19801

Ross Flockerzie, Esquire
Public Defender's Office
820 N. French Street
Wilmington, DE 19801

   RE: State v. Dewayne McNair
      ID No. 1212003086A

On Defendant's Motion for New Trial - DENIED

Dear Counsel:

   The Court has reviewed the recent submissions from counsel in Mr. McNair's case in relation to his request for a new trial. In spite of the unfortunate and inappropriate assertions of defense counsel that the trial was a "sham" and the reasoning of this Court in *State v. Irwin* is "flawed," the Court does not find the circumstances surrounding Mr. McNair's trial and the conduct of the Medical Examiner's lab justify a new trial in this matter.[1] As such, Defendant's Motion for New Trial will be denied.

---

[1] *State v. Irwin*, 2014 WL 6734821 (Del. Super. Nov. 17, 2014).

To begin with, it is important to recognize that the form motion filed in this matter was like those filed in similarly situated drug cases where the trial occurred before the Office of the Chief Medical Examiner ("OCME") misconduct was discovered but the defendant had not been sentenced when the investigation was disclosed. These motions assert that the drug evidence lacks the requisite scientific reliability for admission under *Daubert* and Rule 702 of the Delaware Rules of Evidence. These arguments were considered in *Irwin* and were rejected subject to the relevancy limitations established in that case. However, the *Irwin* decision does make some significant findings that the Court believes are relevant in the context of this Motion for New Trial.

First, in this case, there is a minor deviation or discrepancy in weight between what was submitted to the lab by the police and what was discovered during drug testing. The preliminary weight of 7 grams, which field tested positive for cocaine, is set forth in the affidavit of probable cause. The OCME chemist weighed the material as 6.2 grams and confirmed it was cocaine. The Court believes this is not a significant deviation and alone would not justify a new trial. Because of this finding, the Court finds the bright line rule established in *Irwin* could not have been met by Defendant if the case had gone to trial after the *Irwin* decision was rendered. In discussing certain cases in which inquiry into the OCME investigation would be relevant, the Court stated:

> Therefore, the Court has decided that if a case was sent to the OCME drug lab for testing, the defense will be free to question the State's witnesses or to present evidence regarding the OCME investigation only if there is either evidence of tampering of the packaging submitted by the police or a discrepancy in weight, volume or contents from that described by the seizing officer. If evidence of tampering is not present and there is no discrepancy, the OCME investigation is not relevant under Delaware Rule of Evidence 402 or at least would be misleading and unfair under Rule 403. In such cases, therefore, evidence of the investigation should not be introduced.[2]

There is no evidence here to suggest that drug evidence envelopes were opened or tampered with in any way and the arresting officer, the Defendant, and the chemist all agree the substance was cocaine. While the Court agrees that many of the individuals who may have come into contact with Mr. McNair's evidence while at

_____
[2] *Id*. at *36.

the OCME have been the subject of much controversy, that by itself does not mandate a new trial in every case where such contact was possible. From all accounts, the evidence seized by the police was the same evidence tested by the lab. As the Court has stated many times, the cases developed to date have not reflected one where drugs were planted to incriminate a particular defendant. If anything, the missing drugs from this lab would reflect just the opposite.

What is also unique about this case is, that, unlike in most drug cases, defense counsel advised the State he was unwilling to agree to the chain of custody being established pursuant to 10 Del. C. § 4330. As such, there was significant evidence and argument heard before the trial judge relating to chain of custody. Any discrepancy in that chain was made clear to the jury, both through cross-examination and closing arguments. The jury was aware that there was a two day gap between the day the drugs were delivered to the lab by the police and when they were first recorded in the OCME chain of custody system. Further, the fact that the chemist who put the prepared vials into the testing machine was also not listed was clearly presented to the jury. When considered in total, this is not a case where significant breaks in the chains were unknown to the jury. It appears these issues were fully explored and would have been available to the jury as they assessed the credibility of the relevant witnesses and considered their verdict.

Next, Defendant argues that, since trial, he learned of the administrative discipline of the assigned chemist, Patricia Phillips, and that such conduct warrants a new trial. In Defendant's July 27, 2015 submission, he listed three specific instances where Ms. Phillips had received corrective action reports. While all three events are troublesome to the Court and reflect a degree of sloppiness, which it finds unacceptable, there is nothing to suggest that the same conduct occurred when Mr. McNair's drugs were being tested. Obviously if the State was aware of this conduct by Ms. Phillips it would have been required to disclose it. However, the simple answer is that such administrative internal discipline issues are not regularly a matter disclosed in criminal proceedings, and since the problems at the OCME were not discovered until after this trial, there was no heightened sensitivity to such issues that would invoke a *Brady* violation or misconduct by the State that would warrant a different decision.

While the Court has decided not to grant a new trial on the legal issues presented, Defendant has also asked that, at a minimum, the drugs seized be retested. The Court believes, that to the extent the drugs are still available and have not been destroyed, such request is a reasonable one. In fairness to Defendant, the Court will require that the drugs be tested by an independent lab unassociated with the OCME. This would at least end any uncertainty that the drugs seized and tested were actually cocaine as admitted by the Defendant at the time of his arrest. The Court takes this unusual step because of the significant sentence the Defendant is facing and because it is fair to stay that the individuals who may have touched Mr. McNair's drugs are not unfamiliar to the Court from the numerous motions and hearings held as a result of the OCME investigation. If the drugs, after retesting, are cocaine, the denial of the Motion for New Trial will be final, and the case will be sent to Judge Medinilla for sentencing.

IT IS SO ORDERED.


 /s/ William C. Carpenter, Jr.
Judge William C. Carpenter, Jr.

WCCjr:twp

cc:    The Honorable Vivian Medinilla
       Prothonotary